IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUVERNE L. JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> ) | 4:10CV3016 <br><br> MEMORANDUM AND ORDER |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). Plaintiff LuVerne L. Johnson ("Johnson") appeals the Commissioner's decision to deny his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This court has jurisdiction under 42 U.S.C. § 405(g).

Johnson filed an application for benefits on or about September 24, 2004, alleging that he became unable to work on January 31, 2003, due to his disabilities. After denial of his application initially and on reconsideration, Johnson requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held hearing on February 16, 2007. After this hearing, the ALJ issued a decision stating that (1) Johnson is not under a disability as defined in the Social Security Act; (2) Johnson has not engaged in substantial gainful activity from January 1, 2003, through December 31, 2003; (3) Johnson has osteoarthritis of the knees bilaterally, obesity, and hypertension, which are "'severe' impairments"; (4) Johnson's severe impairments, taken singly or in combination, do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5)

Johnson does not retain the residual functional capacity ("RFC")[1] to perform his past relevant work as a farmer, salvage worker, or retail store owner.[2] The ALJ determined that Johnson could perform sedentary work including jobs as an assembler, document preparer, and addresser. Johnson then filed this appeal in the United States District Court for the District of Nebraska.

## BACKGROUND

Johnson was 58 years of age, 5'11", and weighed 310 pounds at the time of his ALJ hearing. He obtained a GED and in the relevant past worked as both a farm and salvage worker. He complained of knee pain, both before and after 2003, which he argues prevented him from working.

In terms of his daily activity, Johnson indicated he could only drive a car 50 miles before his knees hurt, but could drive the larger Suburban vehicle 400 to 500 miles because he could stretch. Tr. 107, Filing No. 14. He could do minor car repairs, wash his laundry, load the dishwasher and take short walks around the house. *Id*. He also indicated that he sat seven to ten hours a day. *Id*. For a period of time, he bowled once a week with his wife and occasionally fished. Tr. at 108, 112. At the hearing Johnson testified that he must nap every day up to two to three times per day for 15 minutes to an hour, that he can do no housecleaning, that his wife and daughter must help him tie his shoes, that he has

---

[1] Residual Functional Capacity is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184 (July 2, 1996). In other words, RFC represents the most an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.925(a).

[2] The ALJ did not consider the retail ownership and work as past relevant work. Johnson did not receive any money for this work, so it was not substantial gainful activity.

now been prescribed a cane, and that he can no longer go bowling. He lives in a house with an upstairs and a basement. He does not go into the basement. He has not been upstairs for five years. He sleeps on the first floor, because he cannot walk up the steps. He also has a problem with balance. Johnson testified that his average pain is about 6 and when he has to do something it goes up to 8 or 9.

In December 2002, Johnson was involved in a car accident. He was diagnosed with degenerative changes in his shoulders and neck and mild degenerative changes in his knees. Tr. at 293. He had surgery on his neck which appears to have alleviated most of those problems.

Johnson complained of knee pain to Dr. Christopher Costa, his treating physician in December 2002. Tr. 325. He was also diagnosed by Dr. McKenzie with mild to moderate degenerative arthritis. Tr. at 297-98. The record supports chronic knee pain in 2002, 2003, 2005 and 2006. Tr. 38, 299, 303, 304, 305, 308, 325, 329, 355, 410-413, 415-16. Johnson was diagnosed by Dr. Leland Lamberty on May 5, 2004, with knee pain that would affect his ability to do prolonged standing, walking, climbing or working on uneven surfaces. Tr. at 285. Johnson took pain medications, including Tramadol for two years, Viox, and different anti-inflammatories. Tr. at 406-407. He has taken Flexeril for muscle spasms from 2003 to the present. Tr. at 406.

On May 5, 2004, Johnson was seen by the state agency doctor, Leland Lamberty. Dr. Lamberty concluded that Johnson would not be a good candidate to do anything that required substantial standing, walking, climbing or activities on an uneven surface. Also, Dr. Lamberty determined that sitting and working for a period of time could increase Johnson's neck discomfort.

In 2004 Johnson returned to Dr. Costa for knee pain. Johnson received injections in his knees. In 2005 Johnson saw Dr. Mark McKenzie for knee pain. He received a series of injections and then had right knee surgery to repair a medial meniscus tear. Tr. 329-30.

## STANDARD OF REVIEW

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the court must review the Commissioner's decision in order to determine "whether there is substantial evidence based on the entire record to support the ALJ's factual findings." *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 1997) (quoting *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citations and internal quotation marks omitted). A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (citations, brackets, and internal quotation marks omitted). *See also Finch*, 547 F.3d at 935 (explaining that the court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it).

The court must also determine whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). The court does not owe deference to the Commissioner's legal conclusions. *See Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003).

**LAW**

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To determine whether a claimant is disabled, the Commissioner must perform the five-step sequential analysis described in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). More specifically, the Commissioner must determine: "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue*, 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue*, 607 F.3d 533, 536-37 (8th Cir. 2010). "Through step four of this analysis, the claimant has the burden of showing that she [he] is disabled." *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). After the analysis reaches step five, however, "the burden shift[s] to the Commissioner to show that there are other jobs in the economy that [the] claimant can perform." *Id.*

"It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2003). However, the ALJ "is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996). *See also Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

## DISCUSSION

In his brief Johnson lists a number of errors committed by the ALJ. However, Johnson only argues and discusses the discrediting of pain by the ALJ, failure to form appropriate hypotheticals, and failure to award benefits. The standard, in the Eighth Circuit, for evaluating a claimant's subjective complaints of pain in Social Security cases is *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). According to the Eighth Circuit, an ALJ may not disregard a plaintiff's subjective complaints solely because the objective medical evidence does not fully support them:

> Absence of objective medical basis supporting the degree of severity of disability claimant's subjective complaints alleged is just one factor to be considered in evaluating credibility of testimony and complaints; [ALJ] must give full consideration to all of the evidence presented relating to subjective complaints, including the [plaintiff's] prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the [plaintiff's] daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.

> The [ALJ] is not free to accept or reject the [plaintiff's] subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the record as a whole.

*Polaksi v. Heckler*, 739 F.2d at 1322 (emphasis in original). "Pain is recognized as disabling when it is not remedial and precludes claimant from engaging in any form of substantial gainful activity; mere fact that working may cause pain or discomfort does not mandate finding of disability." *Cruse v. Bowen*, 867 F.2d 1183, 1183 (8th Cir. 1989).

"Not all pain reaches a level [at] which it is disabling." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). "While the ALJ may not discount a social security disability claimant's complaints solely because they are not fully supported by objective medical evidence, a claimant's complaints may be discounted based on the inconsistencies in the record as a whole." *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). "Allegations of disabling pain made by claimant seeking social security disability benefits may be discredited by evidence that claimant has received minimum medical treatment and/or has taken only occasional pain medication." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).

To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart,* 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such

7

questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater,* 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater,* 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

The question is whether the ALJ properly included Johnson's relevant complaints of pain. The ALJ need not use the word "pain" so long as he adequately conveys the limitations that result from the pain. *England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007); LaCroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006).

The hypothetical posed by the ALJ to the VE assumed that Johnson could lift up to 20 pounds occasionally, 10 pounds frequently, and could work an 8-hour day with opportunities to sit and stand. It also assumed that Johnson could bend and stoop but not kneel or squat. Tr. at 437. The VE determined that with those limitations Johnson could perform jobs as a final assembler, document preparer, and addresser. The VE avoided answering counsel's questions regarding pain and how it related to Johnson's ability to work. Tr. 439-41. The VE indicated it would be difficult for her to answer the question

without knowing how the pain experienced by the claimant specifically limited his activities. Tr. 439. When asked to consider the time that Johnson would be required take breaks during the day, the VE then said Johnson would be unable to perform the listed jobs.

Johnson argues that the ALJ's hypothetical failed to include his allegations of pain. The court agrees with Johnson. The ALJ did not mention pain in his hypothetical question to the vocational expert. The ALJ did not take into account the allegations of pain which are amply documented by Johnson's treating physicians. The ALJ discounted Johnson's claims of knee pain, because such pain is not chronicled by those doctors who did the surgery on Johnson's neck. However, the court finds the ALJ unduly relied on this "missing" information. Those doctors were hired to assist Johnson with his neck and cervical injuries from the accident.

The court notes that the VE listened to Johnson's testimony. Johnson clearly listed many of his limitations. The ALJ failed to further develop these issues. Counsel for Johnson tried but had difficulty obtaining responses from the VE. Accordingly, the court finds the ALJ failed to present the credible allegations of pain with the appropriate limitations to the VE. Accordingly, the court finds the ALJ unduly limited his review of Johnson's pain, inappropriately found the omission of knee pain in the notes of the neck surgeon to be significant, and failed to give adequate weight to the notes of the treating physician which clearly show pain from 2002 forward, as does the pain medication taken by Johnson over the years.

Thus, because the record presented to the ALJ contains substantial evidence supporting a finding of disability, the court may reverse and enter an order granting benefits to the claimant. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir. 1984). "Where the

record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan,* 957 F.2d 611, 614 (8th Cir. 1992). In this case, the substantial evidence supporting a finding of disability is overwhelming. Under the circumstances, further hearings would merely delay benefits[3]; accordingly, an order granting benefits is appropriate. *Id.*

THEREFORE, IT IS ORDERED that the ALJ is reversed and the plaintiff is awarded benefits. The plaintiff shall have fourteen days from the date of this order to file a motion and accompanying brief for attorney fees. The defendant shall have fourteen days thereafter to file its response. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 28th day of December, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

[3]The court notes that Johnson filed for disability benefits in 2004. It is now 2010 and soon to be 2011. The excessive amount of time it takes a Social Security disability claimant to work through this process is abysmal. No one, and especially those who are genuinely disabled, should have to proceed through this process for years before a final award of benefits is determined. This is not an occasional problem and, in fact, it is the norm.

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.